**Ralph ALFONSI, Appellant,**

v.

**HUNTINGTON HOSPITAL, INC., Huntington Hospital and Medical Center, Inc., Larry A. Fryer, M.D., Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 20, 2001.

Filed April 26, 2002.

---

Neal E. Newman, Holland, for appellant.

Marion H. Griffin, Philadelphia, for appellee.

BEFORE: DEL SOLE, P.J., CAVANAUGH, JOHNSON, HUDOCK, JOYCE, STEVENS, MUSMANNO, ORIE MELVIN and LALLY–GREEN, JJ.

DEL SOLE, P.J.

¶ 1 This is an appeal from a trial court order denying Appellant's motion to remove a nonsuit. We affirm.

¶ 2 Appellant, who had been involuntarily admitted to Huntington Hospital for treatment of a schizoaffective disorder, brought an action against Appellees, Huntington Hospital and Medical Center, and Larry A. Fryer, M.D. Appellant claimed that Appellees were grossly negligent in failing to provide him with warnings that his psychiatric medication could affect his ability to operate a motor vehicle and that he should not consume alcohol while medicated. Appellant alleged that Appellees' actions caused him to later suffer injuries in an automobile accident. Appellees responded and cited the qualified immunity provisions of the Mental Health and Procedures Act, 50 P.S. § 7114(a), which offers protection to physicians and mental health facilities in the absence of willful misconduct or gross negligence. At the close of Appellant's case, after Appellee–Dr. Fryer was called by Appellant to testify as if on cross-examination, Appellees moved for a nonsuit. The trial court granted the motion based upon its finding that "no reasonable jury could have found that defendants acted in a grossly negligent manner." Trial Court Opinion, 8/14/00, at 2.

¶ 3 On appeal Appellant questions whether the evidence offered at trial was sufficient to establish a prima facie case of gross negligence based upon Appellees failure to warn him or his mother either verbally or in writing of the danger of consuming alcohol and driving while taking

his psychiatric medication.[1] He further asserts that the entry of the nonsuit was improper where Appellees' cross-examination of witness Dr. Buickians exceeded the scope of the direct examination thereby constituting the introduction of defense evidence.[2]

¶ 4 We begin by addressing Appellant's argument that he established a *prima facie* case of gross negligence based upon testimony demonstrating that he was not warned about the danger of alcohol consumption and driving while taking his psychiatric medication. Appellant argues that although Dr. Fryer testified that he provided these verbal warnings to Appellant, this testimony was sufficiently contradicted by Appellant's own testimony.

¶ 5 An order denying a motion to remove a compulsory nonsuit will be reversed on appeal only for an abuse of discretion or error of law. *Kuriger v. Cramer,* 345 Pa.Super. 595, 498 A.2d 1331 (1985). A trial court's entry of compulsory nonsuit is proper where the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action, and it is the duty of the trial court to make a determination prior to submission of the case to a jury. *Poleri v. Salkind,* 453 Pa.Super. 159, 683 A.2d 649 (1996). In making this determination the plaintiff must be given the benefit of every fact and all reasonable inferences arising from the evidence and all conflicts in evidence must be resolved in plaintiff's favor. *American States Ins. Co. v. Maryland Casualty Co.,* 427 Pa.Super. 170, 628 A.2d 880 (1993).

¶ 6 In ruling on the motion for nonsuit the trial court found that Appellant was bound by the doctor's testimony that he warned Appellant concerning alcohol use, because this testimony was put forth by Appellant in his case-in chief and it was never contradicted by any of Appellant's witnesses. Trial Court Opinion, 8/14/00, at 2. In Pennsylvania, a party calling a witness as if on cross is bound by the witness's testimony unless it is contradicted by other evidence, or is inherently incredible. *Gorfti v. Montgomery,* 384 Pa.Super. 256, 558 A.2d 109, 111 (1989).

¶ 7 At trial Dr. Fryer was asked about these warnings.

Q. All right. Now, Doctor, did you specifically tell—do you have a specific recollection of telling Mr. Alfonsi that this particular medication of Prolixin would have an affect [sic] if alcohol were consumed with it?

A. I am sure that I told Mr. Alfonsi more than once that he should— first of all he should not drink for his own sake and if he were taking medication which I prescribed, which included Prolixin that he should not drink. I am sure about this.

Q. And is this something where you have—you say this because you have a pattern of doing this with patients or because you have a recollection of telling this to Mr. Alfonsi?

1. This argument is presented by Appellant as three separate issues, numbered 1, 3 and 4 in his brief. We have consolidated them here for ease of discussion.

2. These issues were initially presented before a panel of this court which held that the trial court erred in granting the nonsuit because

Appellees offered defense evidence during Appellant's case. Because of this ruling, the panel did not review the other issues presented by Appellant. This court later granted a petition for reargument, withdrew its memorandum opinion and directed the case to be heard before this *en banc* panel.

A. Both. This is something I do routinely and this is something I am sure I did with him.

N.T., 9/14/99, at 127. Appellant asserts that he sufficiently contradicted this testimony by his own testimony which he characterizes as "imply[ing] that no such conversation took place." Appellant's Brief at 16. He points to the following questioning.

Q. Now, did he ever talk to you about Prolixin and what it did and what it was for if you can remember?

A. No, sir, I can't remember that.

Q. Did he ever tell you—do you ever remember him telling you any of the dangers of taking the Prolixin with any other medicine or any type of alcohol?

A. I really don't remember that.

N.T., 9/15/99, at 19.

■ ¶ 8 This testimony does not contradict the clear testimony offered by Dr. Fryer that he advised Appellant not to drink alcohol while on his medication. Further, Appellant was asked whether "it was possible that Dr. Fryer ... warned you about the use of alcohol and medication and you may not remember that." N.T., 9/14/99, at 59. Appellant responded "Yes, that is possible." *Id.* Accordingly, Appellant is bound by the testimony that he was told by Dr. Fryer not to consume alcohol while on his medication.

¶ 9 Appellant asks us to find his testimony similar to the statement offered by a witness in a railroad crossing case advising that he did not hear a warning bell or siren. He cites to *Fallon v. Penn Cent. Transp. Co.*, 444 Pa. 148, 279 A.2d 164 (1971), where the Court held that a witness, who has occasion to listen for a signal, may offer positive evidence that a signal was not given when he testifies that he heard no signal. This ruling addresses a situation different than that presented here. This case involves a motion for nonsuit based upon testimony offered by a party witness called as if on cross, who offers testimony on direct indicating that he gave a certain warning. The only other evidence offered by Appellant are his statements that he did not hear a warning and an admission that one may have been given. The doctor's testimony remains uncontradicted and it was appropriate for the court to conclude that a verbal warning was given.

■ ¶ 10 Appellant also argues that absent an entry in his medical record indicating that a warning notice was provided, there is an inference that no warning was given. However Appellant was unable to offer proof that the hospital had a policy or procedure requiring that such notations be included in a patient's charts. Contrast *Stack v. Wapner* 244 Pa.Super. 278, 368 A.2d 292 (1976) (where hospital policy mandated treatment entries on patient charts, the absence of entries was sufficient to contradict the defendant doctor's statement that he was present and monitored the administration of the drug to the patient). Thus, the fact that there was no entry on the chart in reference to the warning does not contradict Dr. Fryer's testimony that he gave such a warning.

■ ¶ 11 Appellant further asserts that the failure to provide a written warning about the consumption of alcohol while medicated constituted a gross deviation from the standard or care. He claims that Dr. Michals rendered an opinion that the failure to give verbal instructions "as well as written instructions and warnings constituted a gross deviation from accepted standards of care." Appellant's Brief at 33. Appellant however mischaracterizes the doctor's testimony. The doctor was asked whether the failure to provide a written document would be gross deviation

from an accepted standard of medical care. The doctor responded: "[I]t would be a gross deviation with the proviso as well the verbal warnings were not given. So if you don't do it verbally, you don't do it in writing there is a gross deviation." N.T., 7/14/99, at 34. Because there is support for the finding that verbal warnings were given, there is no basis offered from this testimony to find that Dr. Fryer's actions did not comport with accepted standards of medical care.

¶ 12 Appellant makes an additional claim regarding Appellees' failure to provide a warning to Appellant's mother. Appellant asserts that Dr. Fryer's failure to contact Appellant's mother and provide her with warnings on the potential effects should Appellant consume alcohol while he was receiving medication constituted a gross deviation from accepted standards of care. Appellant refers to testimony offered by Dr. Michals, however this testimony does not support Appellant's position. The doctor testified "it would be reasonable in this case" for Dr. Fryer to have approached Appellant "as to whether or not his mother should have been at least advised about certain conditions." *Id.* at 26. This testimony only indicates that it would have been reasonable for Dr. Fryer to speak to his patient regarding the information the patient might want shared with his mother. It does not support Appellant's claim that Dr. Fryer's failure to contact the mother constituted a gross deviation from accepted standards of care.

¶ 13 The remaining issue questions whether Appellees' cross-examination of Dr. Buickians exceeded the scope of the direct examination so as to constitute the presentation of evidence by the defense. Appellant correctly notes that a nonsuit may not be granted where the defendant has offered evidence in support of his defense during the plaintiff's case.[3] *Harnish v. School Dist.*, 557 Pa. 160, 732 A.2d 596 (1999); Appellant's Brief at 23. We find it unnecessary to examine the testimony offered to determine whether it exceeded the scope of direct and constituted defense evidence, because Appellant has not preserved this issue for our review by setting forth this claim in response to Appellees' motion for nonsuit.

¶ 14 At trial during the cross-examination of Dr. Buickians he was asked whether he had personally warned the patient "in any way." N.T., 7/14/99, at 163. Appellant's counsel objected to the question as "beyond the scope." *Id.* The objection was overruled and the cross-examination continued. At the close of Appellant's case Appellees made a motion for nonsuit claiming that Appellant had not met his burden to prove Appellees acted in a grossly negligent manner. Appellant responded by arguing that gross negligence was established, but never challenged the motion for nonsuit by arguing that it could not be entered because defense evidence had been presented. The trial court was not apprised of this argument when making its ruling. Appellant merely argued that he had presented sufficient evidence to allow the case to proceed to the jury. Because the trial court was not presented with this claim, it could not consider whether it was a valid basis upon which to deny the motion.

---

3. This statement of the law is appropriate for resolution of this case which concerns a trial which occurred in September 1999, prior to the adoption of new Rule 230.1(a)(1), effective July 1, 2001. The new rule permits a court to consider a nonsuit even after the defendant has introduced evidence, where the court considers only evidence favorable to plaintiff when determining whether plaintiff has established a right to relief. *See* Pa.R.C.P. 230.1 Explanatory Comment—2001 2.(I)(2.)

¶ 15 A party must make timely and specific objections at the appropriate stage of the trial court proceedings in order to preserve an issue for review. *Hong v. Pelagatti,* 765 A.2d 1117 (Pa.Super.2000). Appellant's failure to object to the grant of the nonsuit on the basis that Appellees had introduced evidence during Appellant's case, results in a waiver of this claim. See *id.*; *Corrado v. Thomas Jefferson University Hospital* 790 A.2d 1022, 2001 PA Super 363 (2001); *Kelly v. St. Mary Hospital,* 778 A.2d 1224 (Pa.Super.2001) (each finding the plaintiff had waived claim that the trial court erred in granting a nonsuit where the plaintiff had responded to the motion but did not object on the basis that the defense had offered evidence).

¶ 16 Order affirmed.