J. A20042/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BETTY ROMANO, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS WAFFENSCHMIDT AND | : | |
| JOHN M. HUMPHREY, IN THEIR OWN | : | No. 5 MDA 2017 |
| RIGHT AND T/D/B/A | : | |
| JBT HOLDING, A PARTNERSHIP | : | |

Appeal from the Judgment Entered December 2, 2016,
in the Court of Common Pleas of Lycoming County
Civil Division at No. 09-02364

BEFORE:  GANTMAN, P.J., PANELLA, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 02, 2018**

Betty Romano appeals the judgment entered by the Court of Common Pleas of Lycoming County after the trial court granted a motion for compulsory nonsuit in favor of Thomas Waffenschmidt ("Waffenschmidt") and John M. Humphrey ("Humphrey") in their own right and t/d/b/a JBT Holding, a partnership (collectively, "appellees") and against appellant.  After careful review, we affirm.

The record reflects that on October 7, 2007, appellant was touring the inside of a house that was owned by appellees accompanied by a real estate

broker, Kathy Probst ("Probst").[1]  The house was for sale, and appellant was looking at possibly purchasing it.  In the house, there was a small "step-down" from the kitchen to the adjacent "mud room" or "summer kitchen."[2]  In going from the kitchen to the summer kitchen, appellant fell and allegedly injured her shoulder/arm.

Appellant filed a complaint in civil action slip and fall premises liability sounding in negligence.  Appellant sought damages in an amount in excess of $50,000 plus interest, costs, and attorney fees.

Appellees answered and denied the material allegations.  Appellees raised as new matter that appellant failed to state a cause of action, that her injuries, if any, were caused by herself or third parties and her claims were barred by the statute of limitations.  Appellant denied the allegations raised in new matter.

On July 23, 2014, the trial court granted appellees' motion ***in limine*** to preclude reference by appellant's expert to the 2006 International Building Codes, and to preclude testimony by the expert concerning the condition of the step-down and whether the step-down is a dangerous

---

[1] Appellant originally included Probst and Davis Real Estate as defendants in the complaint in addition to appellees.  However, Probst and Davis Real Estate each filed motions for summary judgment that the trial court granted on July 23, 2014.

[2] The room is referred to by both names.  For clarity's sake, we will refer to the room as the "summer kitchen."

condition and/or a hidden hazard. The trial court reasoned that the determination was within the common knowledge of a layperson.

The trial court conducted a trial on November 2, 2016. Appellant testified that she arrived at the house at 937 Louisa Avenue at approximately 11 a.m. on October 18, 2007, to examine it for possible purchase. Probst was the realtor showing the house. (Notes of testimony, 11/2/16 at 8-10.) Appellant described a photograph of the step-down:

> I see the one floor leading to the other floor. One's got tiles, and one's got chipped wood all over the place. The edge of the step is all full of chipped wood. And I have every reason to believe that's why my foot got caught, my heel and my shoe got caught.

*Id.* at 14.[3] Appellant also described her fall:

> And when I walked I'm looking -- I'm still looking at all those beveled windows in the house because that's all it was, you know. And I didn't pay attention. And I heard [Probst] say, [appellant], come here and see this. And that's what I did. I walked down. I wasn't looking down. I just walked like you would walk anywhere.

*Id.* at 17. Appellant testified that she broke her right arm when she fell. (*Id.* at 18-19.)

On cross-examination, appellant admitted that she had torn rotator cuffs in both of her shoulders after she slipped on ice prior to the fall at issue. (*Id.* at 41.) She also admitted that sometimes her legs "just go out."

---

[3] The record reflects that this photograph was taken some years after the October 18, 2007 incident.

(*Id.* at 46.)   Appellant further admitted that she had a problem with falls due to dizziness and loss of balance in the years before and after the incident at 937 Louisa Avenue.  (*Id.* at 49.)  Appellant identified a medical record from October 29, 2007, shortly after her fall, which stated that she "has been feeling dizzy and once fell, feels drunk at times, especially when turning [her] head."  (*Id.* at 61.)

Humphrey, called by appellant as a witness though he was an appellee, testified that the area where appellant fell was painted gray at the time.  (*Id.* at 89.)  Humphrey did not put up any signs to indicate that there was a step-down when he tried to sell the property.  (*Id.* at 103.)

Probst testified that when she was showing the house to appellant, appellant fell as she crossed the threshold into the summer kitchen.  (*Id.* at 132.)  Probst explained that the summer kitchen had "gorgeous tall cabinets that were like from the ceiling and clear down."  (*Id.* at 133.)  Probst asked appellant to look at the cabinets.  Probst then recalled, "And I said to her, I said, make sure, you know, be careful because I said there's a step down.  I didn't -- I always do that with my customers because I don't want somebody to fall.  I don't want somebody to fall down steps, up steps or whatever."  (*Id.* at 133.)  Probst explained that the cabinets would have been at approximately appellant's eye level and higher.  (*Id.* at 134.)  On cross-examination, Probst testified that she did not see any splintering or broken wood in the area of the transition from the kitchen to the summer

kitchen. (*Id.* at 144.) She also had no difficulty observing that there was a step-down. (*Id.*) She also testified that the home was very well kept and very well lit. *(Id.* at 142.)

At the conclusion of the presentation of appellant's case, save for the introduction of medical bills, appellees moved for the entry of a compulsory nonsuit on the basis that appellant failed to make out a *prima facie* case that established liability on the part of appellees, failed to make out the reckless elements of premises liability, and did not establish the existence of a dangerous condition or unreasonably dangerous condition to an invitee on the premises. Appellees also asserted that appellant did not establish that appellees knew or should have known that the alleged condition was in any way dangerous or posed a hazard and did not establish that this condition was one which would not have been subject to inspection by someone exercising reasonable care for their own safety. (*Id.* at 155-156.)

After appellant's counsel responded, the trial court stated:

> I realize that I'm not supposed to make credibility determinations. I can only say that I did lose a little of the continuity of the testimony when your client insisted that she went to the Jersey Shore Hospital, and it appears that she went to the Williamsport Hospital. And from then on I'm not really sure I understood what her position is.
>
> What is the negligence? I mean, you have [] Probst that tells us that this is an extremely well-maintained -- this is your witness now that says this is an extremely well-maintained home, that it was well lit, that under no circumstances in her experience as a realtor would she have expected

there to be a yellow line or a red line painted on the transition from these two rooms or a sign put up.

She also indicated that there were no visibility problems. She totally rebutted your client's testimony about flakes on the step by saying that it was just recently repainted, that there were no chips on the floor whatsoever. She indicated your client had sneakers on. She indicated that she told your client to be careful.

Your client testified that she wasn't looking. Your client testified that she wasn't paying attention. Where is the negligence in this case?

*Id.* at 157. The trial court granted the compulsory nonsuit and dismissed the jury. (*Id.* at 162.)

On November 3, 2016, the trial court filed the order granting the motion for compulsory nonsuit with judgment for appellees. On November 14, 2016, appellant filed a post-trial motion to remove the nonsuit and order a new trial on all issues. On November 29, 2016, the trial court denied the motion. On December 2, 2016, the trial court entered judgment in favor of appellees and against appellant. On December 29, 2016, appellant filed a notice of appeal. On January 23, 2017, the trial court directed appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied with the request and filed the statement on February 13, 2017. On February 16, 2017, the trial court stated that it relied on its order dismissing the post-trial motion in its order issued pursuant to Pa.R.A.P. 1925(a).

Appellant contends that the trial court erred and/or abused its discretion when it denied appellant's post-trial motion to remove nonsuit and order a new trial on all issues.

> We are mindful that our standard of review following the denial of a motion to remove a compulsory nonsuit is as follows: "This Court will reverse an order denying a motion to remove a nonsuit only if the trial court abused its discretion or made an error of law." **Brinich v. Jencka**, 757 A.2d 388, 402 (Pa.Super.2000) (citation omitted), **appeal denied**, 565 Pa. 634, 771 A.2d 1276 (2001). "Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason." **Miller v. Sacred Heart Hosp.**, 753 A.2d 829, 832 (Pa.Super.2000) (internal citations omitted). The grant of a nonsuit is proper where, having viewed all evidence in the plaintiff's favor, the court determines that the plaintiff has not established the necessary elements of his cause of action. **Brinich, supra**; **see** Pa.R.C.P. No. 230.1.

**Oliver v. Ball**, 136 A.3d 162, 166, (Pa.Super. 2016), **appeal denied**, 145 A.3d 167 (Pa. 2016).

> The standard of review on appeal from the denial of a motion to remove a compulsory nonsuit is as follows:
>
>> The plaintiff must be allowed the benefit of all favorable evidence and reasonable inferences arising therefrom, and any conflicts in the evidence must be resolved in favor of plaintiff. Further, [i]t has been long settled that a compulsory nonsuit can only be granted in cases where it is clear that a cause of action

> has not been established. However where it is clear a cause of action has not been established, a compulsory nonsuit is proper. We must, therefore, review the evidence to determine whether the order entering judgment of compulsory nonsuit was proper.
>
> *Wu v. Spence*, 413 Pa.Super. 352, 605 A.2d 395, 396 (1992), *appeal dismissed as improvidently granted*, 534 Pa. 309, 632 A.2d 1294 (1993) (internal citations omitted).

*Braun v. Target Corp.*, 983 A.2d 752, 764 (Pa.Super. 2009), *appeal denied*, 987 A.2d 158 (Pa. 2009).

Initially, appellant argues that this court should reverse the trial court's entry of compulsory nonsuit because the trial court erred as a matter of law or abused its discretion when (1) the trial court admitted that he was making the determination to grant nonsuit based on witness credibility; (2) appellees, through their counsel, presented testimony in support of appellees' case-in-chief via cross-examination during appellant's case-in-chief; (3) the trial court granted nonsuit when appellant's case-in-chief was not completed at the time of granting nonsuit; (4) the trial court failed to give appellant the benefit of all evidence favorable to her together with all reasonable inferences from facts arising therefrom; and

(5)[4] the trial court failed to resolve conflicts in evidence presented in favor of

appellant.[5]

With respect to whether the trial court considered appellant's

credibility when it granted the nonsuit, the trial court stated,

---

[4] Issues 4 and 5 are combined in the argument section of appellant's brief.

[5] Before addressing appellant's arguments, appellees argue that this court lacks jurisdiction to hear appellant's appeal. Here, the trial court denied appellant's motion for post-trial relief on November 29, 2016. Appellees filed a praecipe to enter judgment in favor of appellees, and the prothonotary of the Court of Common Pleas of Lycoming County entered judgment on December 2, 2016. In her notice of appeal filed on December 29, 2016, appellant stated that she was appealing from the order the trial court entered on November 29, 2016, and attached a copy of the trial court's order that denied her motion for post-trial relief. Because orders denying post-trial relief are interlocutory and an appeal of a final order in a civil case lies from the entry of judgment, *see PA Energy Vision, LLC v. South Avis Realty, Inc.*, 120 A.3d 1008, 1012 n.3 (Pa.Super. 2015), *appeal denied*, 138 A.3d 6 (Pa. 2016), appellees argue that this court lacks jurisdiction to hear appellant's appeal.

However, in *Kaufman v. Campos*, 827 A.2d 1209 (Pa.Super. 2003), *appeal denied*, 839 A.2d 352 (Pa. 2003), this court addressed a similar issue where the Court of Common Pleas of Indiana County issued a June 4, 2002 order that denied post-trial motions. Judgment was entered on July 1, 2002. The appellant in *Kaufman* filed a notice of appeal on July 2, 2002, purportedly from the June 4, 2002 order that denied post-trial motions. This court in *Kaufman* held, "[t]his technical error does not affect our jurisdiction, as the notice of appeal was timely filed on July 2, 2002. *See* Pa.R.A.P. 903(a) requiring notice of appeal to be filed generally within 30 days." *Id.* at 1210 n.1.

Here, the post-trial motion was denied on November 29, 2016. Judgment was entered on December 2, 2016. The notice of appeal purportedly from the denial of post-trial motions was filed on December 29, 2016. As in *Kaufman*, the appeal was timely (within 30 days) of the entry of judgment (December 2, 2016), and the technical defect does not affect our jurisdiction.

> I realize that I'm not supposed to make credibility determinations. I can only say that I did lose a little of the continuity of the testimony when your client insisted that she went to the Jersey Shore Hospital, and it appears that she went to the Williamsport Hospital. And from then on I'm not really sure I understood what her position is.

Notes of testimony, 11/2/16 at 157.

"When an issue of credibility is raised on motion for compulsory nonsuit, it is not within the province of the trial judge to determine the believability of the plaintiff's testimony." **Scott v. Purcell**, 415 A.2d 56, 58 (Pa. 1980).

Here, appellees did not raise the issue of credibility on the motion for compulsory nonsuit. The trial court acknowledged that it was not supposed to make credibility determinations and went on to explain the basis for its decision at trial to grant the nonsuit because it could not see how appellant made out a case for liability. While the trial court may not have made the best possible choice of words, based on an examination of the record, we conclude that the trial court did not make credibility determinations when it granted the compulsory nonsuit.

Appellant next contends that appellees, through their counsel, presented testimony in support of appellees' case-in-chief via cross-examination during appellant's case-in-chief. Specifically, appellant asserts that Probst testified on cross-examination by appellees' counsel that the house was well lit and well maintained and that Humphrey testified on

cross that he neither considered the step-down a defect nor its gray color to be a defect, though he did testify that appellees painted the step-down and floor gray before appellant fell and that the trial court relied on this testimony when it granted nonsuit.

For support, appellant cites to Rule 230.1(a)(2) of the Pennsylvania Rules of Civil Procedure which with respect to a compulsory nonsuit at trial provides, as follows: "(2) The court in deciding the motion shall consider only evidence which was introduced by the plaintiff and any evidence favorable to the plaintiff introduced by the defendant prior to the close of the plaintiff's case." Pa.R.C.P. 230.1(a)(2). Although appellant states that the Pennsylvania Supreme Court has strictly enforced the rule that a nonsuit may not be granted where a defendant has offered evidence either during or after the plaintiff's case, the rule itself states that the court may consider any evidence favorable to the plaintiff introduced by defendant prior to the close of plaintiff's case. In addition, the note to Rule 230.1, states, "Subdivision (a) changes the prior practice whereby the entry of a compulsory nonsuit was precluded when any evidence had been presented by the defendant."

With respect to Humphrey's testimony, he testified as if on cross. Under Pennsylvania law, a party calling a witness as if on cross is bound by the witness's testimony unless it is contradicted by other evidence or was inherently incredible. ***Alfonsi v. Huntington Hosp., Inc.***, 798 A.2d 216

(Pa.Super. 2002), citing **Gorfti v. Montgomery**, 558 A.2d 109, 111 (Pa.Super. 1989). In **Alfonsi**, Ralph Alfonsi ("Alfonsi") appealed the entry of a compulsory nonsuit. This court determined that the trial court did not err when it found that Alfonsi was bound by the testimony of a doctor he called as if on cross who stated that Alfonsi was given a warning concerning alcohol use. Similarly, here appellant is bound by Humphrey's statements.

As to Probst, she was called as appellant's witness and testified on her behalf, though everything she said did not benefit appellant.

Next, appellant contends that the trial court erred when it granted the motion for compulsory nonsuit because her case was technically incomplete as she had not submitted medical bills into evidence.

However, Rule 230.1(a)(1) of the Pennsylvania Rules of Civil Procedure provides that "the court, on oral motion of the defendant, may enter a nonsuit on any and all causes of action if, at the close of plaintiff's case on liability, the plaintiff has failed to establish a right to relief." Pa.R.C.P. 230.1(a)(1).

Here, a review of the record reveals that appellant's case as related to liability was complete. Appellant only had to submit medical bills for the damages portion of her case that allegedly were related to appellant's injuries that stemmed from the fall at the property. The trial court did not err on this point.

Appellant also contends that the trial court failed to apply the correct legal standard by giving appellant the benefit of all evidence favorable to her together with the benefit of all reasonable inferences made from such evidence. Appellant cites only one example: appellant testified that she could not differentiate between the floor and the step-down due to the gray color of both, and Probst testified that she was going to warn appellant about the step-down but she had already fallen. It is unclear exactly what this testimony would accomplish. Appellant fails to lay out in her brief how she established at trial her theory of liability.[6] Appellant established that she fell while traversing a one and one-half to two-inch step-down from the

---

[6] To prevail in a negligence suit, the complaining party must prove four elements:

1.  A duty or obligation recognized by law.

2.  A breach of the duty.

3.  Causal connection between the actor's breach of the duty and the resulting injury.

4.  Actual loss or damage suffered by complainant.

*Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 128, 1286 (Pa.Super. 2005), *appeal denied*, 901 A.2d 499 (Pa. 2006) (citation omitted and emphasis removed).

*Jones v. Levin*, 940 A.2d 451, 454 (Pa.Super. 2007).

- 13 -

kitchen to the summer kitchen and admitted that she was not looking where she was going.

Section 343 of the Restatement (2nd) of Torts provides as follows:

> **§ 343 Dangerous Conditions Known to or Discoverable by Possessor**
>
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965).

The trial court determined that appellant failed to establish liability or negligence on the part of appellees. Appellant did not establish that the step-down was a dangerous condition that presented an unreasonable risk of harm, so that appellees as property owners would be liable for an injury that occurred there. Appellant testified that, after the fact, she saw some splinters on the floor but still could not establish that the alleged splinters caused her fall. This court long ago held that without proof that a defendant had any reason to believe that normal use of a step involved an

unreasonable risk to patrons, a nonsuit is appropriate. *Hixenbaugh v. J.G. McCrory Co.*, 20 A.2d 910, 912 (Pa.Super. 1941).

Appellant also contends that the trial court erred when it reasoned that no expert testimony was presented regarding code or standards violations, even though the trial court knew and admitted that a previous judge in the case had ruled that expert testimony would not be necessary to prove a defect and that code violations were neither admissible nor necessary to prove a defect because a layperson could determine whether the step-down was a defect.

Although appellant raised this issue in her concise statement of errors complained of on appeal, she did not include the issue regarding the motion *in limine* concerning expert testimony in her motion for post-trial relief. "If an issue has not been raised in a post-trial motion, it is waived for appeal purposes." *Diamond Reo Truck Co. v. Mid-Pac. Indus., Inc.*, 806 A.2d 423, 428 (Pa.Super. 2002). Consequently, appellant waived this issue.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3-2-18

- 15 -